UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MELANIE M. GRAVES,

                        Plaintiff,

        v.                                                  **DECISION AND ORDER**
                                                            17-CV-31S
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.


        1.      Plaintiff Melanie Graves challenges the determination of an Administrative

Law Judge ("ALJ") that she is not disabled within the meaning of the Social Security Act

("the Act").  Plaintiff alleges that she has been disabled since October 9, 2014, due to

cervical disc herniation with stenosis and myeloradiculopathy, pseudo-arthritis, migraine

headaches, depression, and anxiety.  Plaintiff contends that her impairments render her

unable to work, and thus, she is entitled to disability benefits under the Act.

        2.      Plaintiff filed an application for disability insurance benefits on October 16,

2014, which the Commissioner denied on January 30, 2015.  Plaintiff thereafter requested

a hearing before an ALJ.  On August 17, 2016, ALJ Robert T. Harvey held a hearing at

which Plaintiff appeared with counsel and testified.  Vocational Expert ("VE") Michele

Erbacher also testified.  At the time of the hearing, Plaintiff was 44 years old, with a

bachelor's degree, and past work experience as a medical aide and Medicaid service

coordinator.  The ALJ considered the case *de novo* and, on September 6, 2016, issued

a written decision denying Plaintiff's application for benefits.  The Appeals Council denied

Plaintiff's request for review on November 14, 2016. Plaintiff filed the current action on January 11, 2017, challenging the Commissioner's final decision.[1]

3.      On August 8, 2017, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 12). On October 10, 2017, the Commissioner filed a Motion for Judgment on the Pleadings. (Docket No. 15). Plaintiff filed a reply on October 23, 2017 (Docket No. 16), at which time this Court took the matter under advisement without oral argument. For the following reasons, Plaintiff's motion is granted, and Defendant's motion is denied.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[1] The ALJ's September 6, 2016 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7.      The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed"

impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.     In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since October 9, 2014, the alleged onset date (R. at 17);[2] (2) Plaintiff's discogenic cervical spine, cervical radiculopathy, status post C5-C6 facetectomy and foraminotomy, C4-C7 fusion, migraine headaches, depression, and anxiety are severe impairments within the meaning of the Act (R. at 17); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part

---

[2] Citations to the underlying administrative record are designated as "R."

404, Subpart P, Appendix 1 (R. at 17); (4) Plaintiff retained the residual functional capacity

("RFC") to perform a range of light work as defined in 20 C.F.R. § 404.1567(b), with

certain exceptions[3] (R. at 19) and could not perform her past relevant work (R. at 24); (5)

Plaintiff could perform jobs that exist in significant number in the national economy (R. at

24). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined

by the Act during the relevant period—October 9, 2014, through September 6, 2016. (R.

at 25).

      10.    Plaintiff contends that remand is required because the ALJ's decision is

fundamentally dishonest and is not supported by substantial evidence. Each argument

is discussed in turn.

      11.    Plaintiff first contends that the ALJ's decision is fundamentally dishonest

because the ALJ mischaracterized Plaintiff's testimony about her daily living skills and

manipulated the VE's testimony. Specifically, Plaintiff faults the ALJ for finding that she

could lift a gallon of milk and crochet as part of her daily living activities. Plaintiff maintains

that she can only lift a gallon of milk with two hands and can only crochet intermittently.

Defendant argues that the ALJ simply summarized Plaintiff's daily activities as she

described them in her testimony.

      12.    Having reviewed the hearing transcript, this Court finds no merit in Plaintiff's

contention that the ALJ mischaracterized her testimony. Plaintiff testified that she could

---

[3] The ALJ found that Plaintiff retained the RFC for light work, except she cannot work in an area with unprotected heights; cannot work around heavy, moving, or dangerous machinery; has occasional limitations in bending, climbing, stooping, squatting, and kneeling; no climbing ropes, ladders, or scaffolds; has occasional limitations in the ability to reach in all directions with either hand; has occasional limitations in the ability to finger with either hand; has occasional limitations in the ability to feel with either hand; has occasional limitation in pushing/pulling with either arm; no crawling; has occasional limitations in the ability to understand, remember and carry-out detailed instructions; has occasional limitations in the ability to maintain attention and concentration for an extended period; has occasional limitations in dealing with work stressors; cannot be exposed to cold and dampness (R. at 19).

lift milk with two hands. (R. at 48). Consistent with that testimony, the ALJ found that Plaintiff could lift milk. (R. at 23). Though the ALJ's finding was not as detailed as Plaintiff's testimony, it is nonetheless consistent with her testimony. Similarly, the ALJ's finding that Plaintiff crochets is not a mischaracterization because Plaintiff testified that she can crochet intermittently. Thus, Plaintiff's own testimony supports that ALJ's findings, which were just two in a long list of daily-living activities that the ALJ considered in reaching his RFC determination. (R. at 23). Consequently, Plaintiff's argument that the ALJ mischaracterized her testimony fails.

13. Similarly, Plaintiff's argument that the ALJ manipulatively phrased hypotheticals to elicit certain answers from the VE is also unfounded. Plaintiff argues that the ALJ posed hypotheticals to the VE specifically crafted to elicit certain responses. Defendant argues that the ALJ's use of hypotheticals was proper.

14. "An ALJ may rely on a vocation expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion, and it accurately reflect[s] the limitations and capabilities of the claimant involved." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983) (internal quotations omitted); Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981)). Here, there is no indication that the ALJ intended to manipulate or mislead the VE. The ALJ rephrased his first hypothetical to present further information about Plaintiff and to clarify the terms "occasional limitation on concentration" and "occasional limitations in dealing with work stressors." (R. at 60). The first hypothetical posed to the VE listed all of Plaintiff's limitations. (R. at 59). Specifically, the ALJ described:

a hypothetical person that could lift and carry 20 pounds occasionally, 10 pounds frequently, could sit two hours of an eight-hour day and stand or walk six hours in an eight-hour day, this person…could not work in areas with unprotected heights, could not work around heavy, moving or dangerous machinery, could not climb ropes, ladders or scaffolds, this person could do no crawling, this person could not work in areas where this person would be exposed to cold or dampness, this person would have occasional limitations in the ability to bend, climb, stoop, squat, kneel, occasional limitations in reaching in all directions with the upper extremity, occasional limitations in pushing and pulling with upper extremities, occasional limitations in ability to understand, remember, carry out detailed instructions, occasional limitations in the ability to maintain attention and concentration, *and I'm going to define that further*, which would result in this hypothetical person being able to perform simple, unskilled, repetitive one or two-step tasks. Occasional limitations in the ability to deal with work stressors.

(R. at 58-59 (emphasis added)).  The ALJ then asked:

Assuming you have a hypothetical person that could perform the demands of light work, has all the non-exertion limitations I've given you in the first hypothetical, further, assuming this person is a younger individual with the same education and work experience to that of the claimant, are there any unskilled jobs in the National Economy such a person could perform?

(R. at 60).  The VE's response was that there were no jobs for one with those limitations

because "the occasional limitations on concentration and the limitation in dealing with

work stressors…preclude all work in the competitive labor market."  (R. at 60).

Specifically, both limitations "would result in time off task that would not be tolerated by

employers." (R. at 60).  The ALJ intended "occasional" to mean that the limitations on

Plaintiff's concentration and ability to deal with work stressors were infrequent.  (R. at 60-

61).  But the VE answered the hypothetical as though the Plaintiff could seldom

concentrate or deal with work stressors, which would result in too much time off.  Thus,

the term "occasional" required clarification, which the ALJ noted in presenting the reworded hypothetical. (R. at 60-61).

15.     The ALJ clarified the limitations on concentration by pointing to the ability to perform repetitive one or two-step tasks.  (R. at 60).  The ALJ further clarified "occasional" in regard to limitations in dealing with work stressors to mean "that this hypothetical person could deal with work stressors frequently."  (R. at 61).  Once the hypothetical was rephrased with the correct and intended RFC limitations, the ALJ asked the VE if her opinion changed. (R. at 61).  The VE thanked the ALJ "for clarifying" (R. at 61), and she answered that one with these limitations could work as a picking table worker or almond blancher. (R. at 61).  Consequently, the record demonstrates that the ALJ rephrased the first hypothetical to resolve ambiguity as to the word "occasional," not to manipulate or trick the VE.  The ALJ's reliance on the VE testimony was therefore proper.

16.     Plaintiff next argues that the ALJ's RFC determination is unsupported by substantial evidence because the ALJ incorrectly weighed Dr. DenHaese's opinion under the treating-physician rule.  Dr. DenHaese found that Plaintiff could not lift any weight greater than ten pounds.  Such limitation would eliminate a classification for light work, and rather would be consistent with sedentary work.  The ALJ, however, found that Plaintiff could perform light work, which requires lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.  See 20 C.F.R. § 404.1567(b).

17.     The treating-physician rule requires that an ALJ give the medical opinion of a claimant's treating physician "controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence."  Shaw v. Chater, 221 F.3d

126, 134 (2d Cir. 2000); see 20 C.F.R. § 404.1527(c)(2).  The "less consistent [a treating

physician's] opinion is with the record as a whole, the less weight it will be given."  Snell

v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999).  The ALJ must give "good reasons" for giving

a treating physician's medical opinion less than controlling weight, and failure to do so is

a ground for remand.  See 20 C.F.R. § 404.1527(c)(2); Halloran v. Barnhart, 362 F.3d 28,

33 (2d Cir. 2004).  When the ALJ does not give a treating physician's medical opinion

controlling weight, he must explain how he weighed the factors in 20 C.F.R. §

404.1527(c).  See Reyes v. Barnhart, 226 F. Supp. 2d 523, 529 (S.D.N.Y. 2002).

   18. Here, the ALJ stated that he relied on Dr. DenHaese's opinions to limit

Plaintiff to an RFC for light work.  (R. at 21).  In addition, the majority of the physical

exertion limitations in the RFC were based on Dr. DenHaese's reports.  (R. at 21).  Yet

the ALJ ignored Dr. DenHaese's ten-pound weight-lifting limitation, which would have

resulted in an RFC for sedentary work with limitations (not light work with limitations).  See

20 C.F.R. § 404.1567(a).  Though the ALJ specified that he placed some weight on Dr.

DenHaese's recommendations to limit the RFC, he did not address why the ten-pound

weight limitation was not adopted.  (R. at 21-24).  An ALJ may credit portions of a treating

physician's report while declining to accept other portions of the same report when the

record contains conflicting opinions on the same medical condition.  See Veino v.

Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).  Here, however, there are no obvious

conflicting medical opinions in the record with regard to the ten-pound weight limitation.

The other medical opinions that the ALJ relied on—including Dr. Balderman's report, the

December 2015 employability assessment, and the March 2015 physical therapy notes—

do not address weight limitations.  (R. at 724-27, 750-51, 797-806).  In other words, no

medical provider found that Plaintiff could lift more than ten pounds, and none rendered an opinion consistent with the ALJ's finding that Plaintiff could lift no more than twenty pounds at a time with frequent lifting of objects up to ten pounds.  Further, Dr. DenHaese's weight limitation of ten pounds is consistent with other substantial record evidence, such as Plaintiff's testimony that she can only lift a gallon of milk with two hands.

19.     The ALJ did not explain why he afforded Dr. DenHaese's opinion less than controlling weight in regard to Plaintiff's weight-lifting restrictions.  In fact, the ALJ did not provide any reasons for the adoption of a twenty-pound weight limitation, which is not supported in the record.   This alone is grounds for remand.   See 20 C.F.R. § 404.1527(c)(2); Halloran, 362 F.3d at 33.   The specific weight limitation in regard to Plaintiff's RFC is of vital importance, because the difference in a ten-pound and twenty-pound limitation is the difference between an RFC of sedentary and light work.  See 20 C.F.R. § 404.1567(a).  If Plaintiff's weight-lifting limitations change, her RFC will also change.  Remand for the ALJ to properly consider Dr. DenHaese's opinion is therefore required.

20.     After carefully examining the administrative record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision.   Plaintiff's Motion for Judgment on the Pleadings is therefore granted. Defendant's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security

for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:          August 2, 2018
                Buffalo, New York


                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge